499 So.2d 1093 (1986)
James W. THOMPSON, Plaintiff-Appellee,
v.
AVENUE OF AMERICAS CORPORATION, Defendant-Appellant.
No. 85-1076.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1986.
*1094 Donald Sharp of Gold, Simon, Alexandria, for plaintiff-appellee.
Gist, Methvin, Dewitt T. Methvin, Jr., Alexandria, for defendant-appellant.
Before DOUCET, LABORDE and KNOLL, JJ.
DOUCET, Judge.
Plaintiff, James W. Thompson, initiated summary proceedings to evict Avenue of Americas Corporation from the operation of the Ramada Inn Motor Hotel in Alexandria, Louisiana. The plaintiff contends that the defendant failed to timely tender the rental payments. From a trial court judgment ordering eviction, the defendant appeals. We reverse.
The defendant became lessee of the Ramada Inn on April 7, 1980. The lease provided that the defendant would pay a monthly rental of $1,850.00 ($10.00 per room for 185 rooms). Additionally, the defendant was obligated to pay 5% of the gross revenue, which payment was to be made by the first day of April of each year.
The monthly rental payments and the annual percentage that became due on April 1, 1985 were not timely paid. On April 23, 1985, the plaintiff notified the defendant by letter stating:
"Your monthly rent as well as your yearly percentage override rent was due April 1st and has not been received in this office this month. Therefore, you are delinquent for same. Please let me have your check by return mail."
On April 25, 1985, a check for $1,850.00 was delivered to the plaintiff. This was payment for the April rent. This check was accepted by the plaintiff and deposited in his account on April 26, 1985.
The rent for June was paid by check sent to the plaintiff on June 18, 1985. This was accepted and deposited by the plaintiff.
On July 22, 1985, the plaintiff delivered to the defendant a notice to vacate the premises. The annual percentage rental had not been paid.
On July 25, 1985, a check in the amount of $49,126.30 was delivered to the plaintiff by the attorneys for the defendant. This check represented the annual percentage plus two months of rent. The plaintiff deposited this check in the registry of the court pending the outcome of these summary proceedings.
Also, on August 2, 1985, the defendant delivered to the plaintiff a monthly rental check in the amount of $1,850.00. This check was also deposited in the registry of the court. This summary proceeding for eviction was filed on August 9, 1985. The plaintiff contends that the demands of the notice of default were not met. The lease contract provided that, in the event that the lessee failed to timely pay the rent, a notice of default must be sent to the lessee by lessor giving the lessee sixty days to cure the condition. The defendant paid the April and May rental within the sixty day period but the annual percentage rental was not tendered until after the sixty day default period. The trial court held that the failure to pay the percentage rental within the sixty day default time violates the terms of the lease and entitles the plaintiff to eviction judgment.
The issue presented on appeal is whether the plaintiff's acceptance of the monthly rental payments, after default notice, vitiated the notice in its entirety to the extent that a new notice of default was required before the lease could be cancelled.
An examination of the law regarding lease cancellations shows that such cancellations are not favored in Louisiana law and that the right to dissolve a lease is subject to judicial control according to the circumstances. Newport-Nichols E. v. Grimes, Austin & Stark, 463 So.2d 111 (La.App. 3rd Cir.1985).
The Louisiana jurisprudence is well established that a lessor's acceptance of rental payments after the notice of default constitutes a waiver of the breach and notification thereof. Major v. Hall, 251 So.2d 444 (La.App. 1st Cir.1971), partially reversed on other grounds, 262 La. 243, 263 So.2d 22 (1972). In this case the notice *1095 of default contained a demand for the April rent and the annual percentage rent. The April rent was paid, but the defendant failed to pay the percentage rental within the sixty day period. The question arises as to the effect of accepting a part of the rent demanded by the plaintiff. This question has been answered by the court in Adam, Inc. v. Dividend, Inc., 447 So.2d 80 (La.App. 4th Cir.1984), where the lessor made a demand for the monthly rent due for the months of May and June 1982 to be paid within sixty days. The rent for May was tendered by the lessee and accepted by the lessor. The court held as follows:

"By accepting a part of the rent demanded, the lessor vitiated the effect of the default and the notice. Adam, Inc. was then bound to again notify Dividend, Inc. of its overdue June rent once the May rent was accepted. While Ernst Food Mart, Inc. v. Jackson-Atlantic, 405 So.2d 1272 (La.App. 4th Cir.1981), and West End v. Board, 299 So.2d 418 (La. App. 4th Cir.1974), indicate that the acceptance of the May rent did vitiate the demand for May and June rent, even more persuasive is the language in Canal Realty & Improvement Co., Inc. v. Pailet, 217 La. 376, 46 So.2d 303 (1950), quoted in Arms v. Rodriguez, 232 La. 951, 95 So.2d 616, 618 (1957). ` ... that the acceptance ... constituted a waiver of that notice and a forgiveness as to any and all previously committed infractions, and it served to reinstate the lease as of that time.'" (Emphasis added.) 447 So.2d 80, 82.
Accordingly, we hold that the sixty day notice of default, as required by the lease contract, was vitiated by the acceptance of a part of the rent as demanded. The lease was reinstated by the acceptance of the April rent. A new default notice would have to be issued before a summary proceeding would be available to the plaintiff.
For these reasons, the judgment of the trial court is reversed and set aside. The suit is dismissed at plaintiff's cost both as to trial court costs and costs of this appeal.[1]
REVERSED AND RENDERED.
NOTES
[1] The record indicates that the trial court consulted with counsel and the trial judge stated that the disposition of the money placed in the registry of the court would be determined by a separate ordinary proceeding.