831 So.2d 311 (2002)
A & J, INC.
v.
ACKEL REAL ESTATE, L.L.C.
No. 02-CA-259.
Court of Appeal of Louisiana, Fifth Circuit.
October 16, 2002.
*313 Marshall G. Weaver, Henican, James & Cleveland, Metairie, LA, for Plaintiff/Appellant.
J. William Starr, Ryan N. Cox, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA, and THOMAS F. DALEY.
THOMAS F. DALEY, Judge.
A & J, Inc., (hereinafter referred to as A & J) takes this appeal challenging the trial court's order requiring A & J to vacate premises leased from Ackel Real Estate, L.L.C. (hereinafter referred to as Ackel).

FACTS:
A & J entered into a commercial lease agreement on November 1, 1996 to lease property located at 1000 Veterans Boulevard, Suite 100, Metairie, Louisiana. On August 15, 2001, after the lease was perfected and recorded, Ackel acquired the subject property. Immediately after acquiring the property Ackel wrote a letter to A & J advising of the transfer of ownership. Shortly thereafter, on August 21, 2001, Ackel wrote a letter to A & J advising A & J that they had fifteen days to remove signs on the exterior of the building and reserved parking designations in the parking lot. On August 30, 2001, A & J filed a Petition for Declaratory Judgment seeking a judicial declaration that the original terms of the written lease were amended by the previous owner and as a result A & J should be permitted to maintain its exterior signage and reserved parking spots. Ackel filed an Answer to the Petition for Declaratory Judgment and filed a Reconventional Demand seeking A & J's eviction from the premises due to their failure to remove signs and reserved parking designations. After the Reconventional Demand was filed by Ackel, A & J filed a Motion for Temporary Restraining Order and Preliminary Injunction in an effort to prevent the eviction.
On November 2, 2001 the parties came before the trial court for a scheduled hearing on the preliminary injunction. Subsequent to the hearing the court entered a judgment declaring that the defendant, Ackel, had the right to require plaintiffs, A & J, to comply with the terms of the lease as written indicating that the exterior signage and reserved parking spots were not in compliance with the written lease. Subsequent to that ruling A & J filed a Motion for a New Trial. Prior to the hearing on the new trial A & J filed an unopposed Motion for Leave to File a Supplemental and Amending Verified Petition citing new developments. On December 7, 2001, the parties submitted a joint motion to have all matters, including the declaratory judgment pending before the court, tried on December 13, 2001. On December 13, 2001 the parties and their attorneys submitted a stipulation of facts to the district court and presented oral argument. The trial court on December 13, 2001 rendered a judgment with reasons denying the Motion for New Trial and ordering A & J to vacate the premises in compliance with the eviction notice previously sent to the petitioners by the defendants. Appellant, A & J, cites eight Assignments of Error.

ASSIGNMENT OF ERROR NUMBER 1
Assignment of Error Number 1 asserts that the trial court erred when it ruled that signs erected and parking spaces reserved by A & J with the approval of the prior landlord constituted a violation of the lease. Appellant argues that, *314 despite the fact that the lease had a provision that required the landlord's approval in writing of any lease modification, the prior landlord verbally consented and agreed to the erection of signs and reservation of parking spaces by A & J.
A & J relies on the case Ford v. Independent Bakers Supply, Inc., 385 So.2d 580 (La.App. 4th Cir.1980) to support their argument. In Ford, the lease between the parties required written consent from the landlord for any modification to the building by the tenant. The tenant made certain improvements to the air conditioning system that required modification to the roof. The landlord was actually present when the modifications were made and did not object to them. The 4th Circuit found that the lessor's silence and inaction regarding the work done on the leased premises was a waiver of the written consent requirement of the lease. Particularly important for the court was the fact the landlord stood by and viewed the progress of the work without protesting or objecting.
The record in this case established that the prior landlord was aware of A & J's exterior signage and was aware of the parking reservations and did not object. A & J asserts that the prior landlord consented to the signs and reserved parking spaces, effectively modifying the written lease. A & J contends that Ackel purchased the property subject to this modification.
Paragraph 6 of the lease states that, "Lessee shall not make alterations, additions, or improvements to the leased premises without lessor's prior written consent." Paragraph 7 states, "Lessee shall not solicit business or display merchandise or other property within the common areas without the prior written consent of the lessor." The lease further states that, "The common areas shall be subject to such reasonable rules and regulations governing the use as lessor may from time to time prescribe including designations, specific areas within the strip shopping center or reasonable proximity thereto in which automobiles owned by lessee, its employees, subtenants, licensees, and concessionaires shall be parked."
The portion of Paragraph 7 of the lease that indicates that the common area shall be subject to reasonable rules and regulations governing the use as lessor may from time to time prescribe, including designation of specific areas within the strip shopping center for parking, indicates that the landlord reserved the right to make certain regulations concerning the use of the common area. This language reserved to the landlord the right to affect signage and parking, and allowed the landlord to modify those rules from time to time. Under this language, even if the previous landlord allowed the sign and reserved parking, Ackel had the right to modify the rules affecting the common areas provided that those rules were reasonable.
Although evidence establishes that the previous landlord acquiesced the erection of the signs and reservation of the parking spots, once Ackel purchased the property, Ackel had the authority, under the written terms of the lease, to modify rules regarding signage and parking. Once put on notice to remove the signs and parking reservations, A & J was required to comply to those terms. We, therefore, find no error in the trial court's ruling that A & J's failure to remove the signs and reserved parking spaces after notice by Ackel violated the lease.

ASSIGNMENT OF ERROR NUMBER 2
A & J asserts that it had a right to seek judicial interpretation of its rights through declaratory judgment.
*315 Clearly, A & J had a right to seek judicial interpretation of its rights via declaratory judgment, but absent an injunction the declaratory judgment suit does not prohibit the landlord from pursuing its lawful remedies under the lease. A & J was given notice on August 21, 2001 to remove the signs within fifteen days. A & J did not remove the signage until after the trial court issued its ruling on November 2, 2001. The ongoing presence of the signs was a violation of the lease terms. A & J's attempt to seek a declaration of the meaning of the lease terms did not in and of itself cure any violation of the lease.

ASSIGNMENT OF ERROR NUMBER 3
A & J asserts that the trial court improperly rejected parol evidence regarding the intended use of the premises. In this Assignment of Error appellant does not identify the evidence that it claims was erroneously excluded. Normally this Assignment of Error would be summarily dismissed for failure to properly identify the alleged evidentiary error; however, based on the record it does not appear that there was any real dispute as to the purpose or use of the premises. Appellant's position that the prior landlord allowed the signage and reserved parking spaces and that those conditions facilitated A & J's business are not factually contested.

ASSIGNMENT OF ERROR NUMBER 4
A & J asserts that Ackel's acceptance and negotiation of three rental checks after notice of default and eviction constituted a waiver of any prior defaults.
As recognized by this Court in Campesi v. Marino, 506 So.2d 177 (La. App. 5th Cir.1987) p 179 and as the Louisiana Supreme Court observed in Canal Realty and Improvement Co. v. Pailet, 217 La. 376, 384-385, 46 So.2d 303 (1950), the acceptance of rent after notice of eviction vitiates the notice. The acceptance of rent by the landlord, "constituted a waiver of that notice and a forgiveness as to any and all previously committed infractions, and it served to reinstate the lease as of that time." In Canal Realty, Id. at 306, the lease stated that there would be no signage placed in the windows. The lessee allegedly violated the lease by putting signs in the window and the lessor sent him a letter of termination. The court found that the lessor's acceptance of rent after he sent out the letter vitiates the prior notice to vacate. The legal consequences of acceptance of the rent after notice of default and notice to vacate were described by the circuit court in Ernst Food Mart, Inc. v. Jackson-Atlantic, Inc., 405 So.2d 1272, 1273 (La.App. 4th Cir. 1981), where the court stated:
The major issue in this case is the question of whether the cancellation of the lease was waived upon acceptance of rent after the notice of cancellation was given. On March 28, 1980, the lessor gave the lessee notice of cancellation because of lessee's violations of the lease and requested the lessee to vacate the premises by May 1, 1980. But the lessor accepted rent for the months of March through June of 1980, in the first weeks of those months. The jurisprudence has been consistent in holding that when rental payment has been accepted after a notice to vacate has been given, the notice is vitiated and the tenant's possession is maintained. Flores v. Gondolier, Ltd., 375 So.2d 400 (La.App. 3rd Cir.1979); Murphy Oil Corporation v. Gonzales, 316 So.2d 175 (La.App. 4th Cir.1975); West End Landing, Inc. v. Board of Commissioners, 299 So.2d 418 (La.App. 4th Cir.1974); Arms v. Rodriguez, 232 La. 951, 95 So.2d 616 (1957).
The courts have also consistently held that when a landlord accepts rental rendered by his tenant after a notice or *316 cancellation and a notice to vacate have been given, such acceptance vitiates notice and the lease agreement is reinstated. Four Seasons, Inc. v. New Orleans Silversmiths, 223 So.2d 686 (La.App. 4th Cir.1969); Canal Realty & Improvement Company v. Pailet, 217 La. 376, 46 So.2d 303 (1950); Landis v. Smith, 227 So.2d 190 (La.App. 2d Cir.1969).
Acceptance of the rent by a landlord cures the prior lease violation, and, therefore, the trial court erred in this case when he ordered the premises vacated.
Three of the stipulations entered into by the parties are relevant to this Assignment of Error.
Stipulation No. 8 states:
On or about August 30, 2001 Ackel Real Estate, L.L.C. sent A & J, Inc. a notice to vacate.
Stipulation No. 13 states:
On or about October 15, 2001, Ackel Real Estate, L.L.C. negotiated the rental checks attached as Joint Exhibit No. 12 which had been tendered by A & J for September and October rent.
Stipulation No. 16 states:
On or about November 5, 2001, Ackel Real Estate, L.L.C. negotiated the rental check tendered to it by A & J for November rent which is attached hereto as Joint Exhibit 14.
Ackel asserts that the negotiation of the rent check of A & J was done in error. However, there is no factual dispute that the check was deposited into Ackel's bank account. The rent once accepted vitiates the notice to vacate. The trial court erred when it found that Ackel's return of the rental payment after depositing A & J's rental check into Ackel's account somehow estoppels vitiation of the earlier eviction notice. The record in this case establishes that A & J cured the breach by removing the signs and parking space designations and thereafter as stipulated, Ackel negotiated the check tendered to it by A & J for November rent. Under these sets of facts the breach was cured and thereafter Ackel negotiated the November rent check, which served to re-establish the lease obligation.

ASSIGNMENT OF ERROR NUMBER 5
A & J argues that the trial court erred in not granting A & J a new trial. A & J correctly asserts that the trial court rendered a judgment on A & J's declaratory judgment petition without notice to the parties. The court's hearing on November 2, 2001 was for the purpose of addressing the merits of A & J's Motion for Preliminary Injunction. After the hearing the trial court took the matter under advisement. A judgment dated November 2, 2001, with written reasons, ruled on the merits of A & J's declaratory judgment action. On November 14, 2001, A & J filed a Motion for New Trial. The Motion for New Trial was set for hearing for December 13, 2001. Prior to the December 13th hearing, both parties stipulated, in a joint motion, to have all matters pending before the court, including the declaratory judgment, tried on December 13th. The court considered all matters on December 13th and ruled accordingly. Therefore, A & J was not prejudiced by the court's previous judgment dated November 2, 2001 because they were given a full hearing on all the issues on December 13, 2001.

ASSIGNMENT OF ERROR NUMBER 6
A & J asserts that the trial court erred in failing to award reasonable attorney fees and costs.
A & J asserts that according to the lease provision should there be any dispute regarding the lease either party will pay the prevailing party's legal fees. Since we, as well as the trial court, have determined *317 that A & J's failure to timely remove signage was in violation of the lease, A & J is not entitled to attorney fees and costs.

ASSIGNMENT OF ERROR NUMBERS 7 AND 8
In Assignment of Error Number 7, A & J alleges that the trial court erred in granting an ex parte order increasing ten fold the amount of bond required for a suspensive appeal. In Assignment of Error Number 8, A & J asserts that the trial court lacked jurisdiction under La. C.C. art.2088 to enter an order requiring payment of ongoing rent after a suspensive appeal had already been granted.
While La. C.C.P. art.2088 dictates that the jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested on the granting of the order of appeal, the trial court retains jurisdiction to test the solvency of the surety on the appeal bond and to consider objections to the form, substance, and sufficiency of the appeal bond. La. C.C.P. art. 5123 sets forth the procedure for testing the sufficiency and validity of the appeal bond. The article indicates that a person wishing to test the sufficiency shall rule the party furnishing the bond into the trial court to show cause why the bond should not be decreed insufficient or invalid. This article clearly contemplates a contradictory hearing to test the sufficiency of the surety bond. While the record indicates that the trial judge increased the amount of surety bond by ex parte order, there is no indication in the record that A & J objected to the increase or asked for a Motion for New Trial on the order increasing the bond. Since A & J did not object at the trial court level, the issue of bond sufficiency is not properly before us. See Leger v. A-1 Nursing Registry, 98-1731 (La.App. 3 Cir. 4/28/99), 737 So.2d 142. As to A & J's claim that the trial court did not have jurisdiction to order the payment of rent, we note that the purpose of the surety bond is to protect Ackel in the event they have monetary injury as a result of the suspensive appeal. Clearly, the suspensive appeal bond amount needed to be sufficient to cover the expected rents during the appellate period. The order requiring the posting of a suspensive bond and the payment of rent appears duplicative. As has been discussed in Assignment of Error Number 4, the ongoing payment of rents in an eviction proceeding has legal consequences. A & J is correct in asserting that the trial court erred in ordering the payment of ongoing rents in addition to posting the suspensive appeal bond. However, since this court has vacated the eviction, it is unnecessary for us to take any specific action with regard to the suspensive appeal bond.

CONCLUSION
Costs of this appeal are to be borne by Ackel. The portion of the Judgment dated December 19, 2001 that ordered A & J to vacate the premises is reversed. The portion of the Judgment denying the Motion for New Trial is affirmed.
REVERSED IN PART; AFFIRMED IN PART.